JOHN CHARLES WILSON & others *vs.* JOHN J. BROUDER
& others.

Essex.    May 16, 1935. — June 27, 1935.

Present: RUGG, C.J., PIERCE, DONAHUE, LUMMUS, & QUA, JJ.

*Contract*, For the transportation of school children. *Municipal Corpora-tions*, Contracts. *School and School Committee. Public Officer.*

Under G. L. (Ter. Ed.) c. 40, § 4, as amended by St. 1932, c. 271, § 6; c. 40,
  § 5; and c. 71, § 68, as amended by St. 1934, c. 97, § 1, the school
  committee of a town has power to contract on behalf of the town for
  the transportation of pupils for a period not exceeding three years;
  and such a contract by the committee would not be invalid though
  not conforming in its term or in the manner of its letting to limitations
  attempted to be imposed by the town, nor by reason of the failure of
  the town to make an appropriation to cover the expense incurred.

BILL IN EQUITY, filed in the Superior Court on January
11, 1935.

Following the filing of a master's report, the decrees
described in the opinion were entered by order of *Morton*, J.
The plaintiffs appealed from the final decree.

*H. V. Charbonneau*, for the plaintiffs.

*P. R. Clay (C. A. Clifford* with him,) for the defendants.

PIERCE, J.    This is a suit in equity by more than ten
taxable inhabitants of the town of Methuen, a municipal
corporation within this Commonwealth, brought under G. L.
(Ter. Ed.) c. 40, § 53, to restrain the school committee of
said town and the Methuen Bus Company, Inc., from enter-
ing into a contract for the transportation of school pupils for
a period of three years, and to restrain the defendant town
of Methuen and its treasurer from paying to the defendant
Methuen Bus Company, Inc., any money of the town under
the provisions of said contract.    The plaintiffs appealed
from a final decree dismissing the bill without costs.

The case was referred to a master who duly filed a report.
Exceptions taken during the hearing before the master were
waived at the conference on the prepared report.    The plain-

tiffs at the hearing in the Superior Court moved that the report be confirmed. The motion was allowed, after hearing, and an interlocutory decree was entered confirming the report.

The master's report, succinctly stated, discloses the following facts: The Methuen Bus Company, Inc., had been transporting the school children of Methuen for five and one half years prior to January 2, 1935. On March 24, 1933, it was voted "To have all departmental purchases and contracts exceeding the sum of Two Hundred Dollars advertised by bids." On October 31, 1934, a special town meeting was called and purporting to act under an article (9) contained in the warrant, "The report of the Advisory Committee was read. . . . A motion made and duly seconded that a committee of five, one from each precinct, be appointed to have full power to make arrangements for bus service for the school children, was withdrawn . . . . A Motion was made and duly seconded that a committee be appointed . . . to make a study of the feasibility of establishing a municipal school-bus system for the purpose of transporting the school children to and from school and make a report at the next annual town meeting and also that the School Committee be instructed not to let any bus contract until this report is made." The moderator put the motion as follows, and it was carried: "On motion made and duly seconded, it was voted that a committee be appointed by the Moderator to make a study of the feasibility of establishing a municipal school-bus system for the purpose of transporting the school children to and from school and make a report at the next annual town meeting." At the same meeting article 10 of the warrant was as follows: "To see if the Town will vote to limit to one year, the contract for the hiring of busses for transporting school children to and from classes, or to take such similar action as will prevent the reletting of a further contract for more than one year, until such time as a committee shall have made a report of the feasibility of a municipal bus system for the above named purpose." The official record of the town clerk of the action of the meeting under this article is as follows: "Article 10. The report of the

Advisory Committee was read. On motion made and duly seconded, it was voted to pass over this article."

On December 14, 1934, the school committee called for bids for the transportation of school pupils, by publishing an advertisement in the Methuen Transcript which read, omitting caption and signature, as follows: "The School Committee of the Town of Methuen invites bids for the transportation of school pupils according to specifications which may be seen at the office of the Superintendent of Schools. The Committee reserves the right to reject any or all bids." On December 26, 1934, a meeting of said school committee was held. Bids for the transportation of school children, called for by the advertisement above referred to, were then opened. There were several bidders and they or their representatives were present. The specifications read in part: The school committee "invites bids for the transportation of not to exceed 800 pupils to and from school, on the day[s] when school is in session under the conditions hereinafter set forth. The contract shall be for a period of three years beginning January 2, 1935 and ending December 31, 1937 and the figure submitted shall be on a yearly basis." The bid of the Methuen Bus Company, Inc., offered to transport "700 or more pupils that are now being transported, and as many more as the law will allow us to carry with the present number of busses, for the sum of $13950.00 per year and when it becomes necessary to put on another bus the price shall be increased to $16950.00 and shall remain so until we have reached the number of 850 children."

The master found that at the time the bids were called seven hundred seven children were being transported and that another bus would be required to transport eight hundred children. The report discloses that the second highest bid was $10,900 for up to eight hundred children and the plaintiffs contend that the acceptance of the bid of the Methuen Bus Company, Inc., by the school committee was unlawful because a call for bids with specifications is in the nature of an offer, and a bid at variance with it is a new offer. Assuming the bid of the Methuen Bus Com-

pany, Inc., was not a full acceptance of the specifications, considered as an offer, the bid had at least the effect of a counter offer, and the acceptance of the bid by the school committee was an acceptance of such counter offer. This acceptance by the school committee constituted a contract unless the law required, as the plaintiffs contend, that the bidders "shall stand upon an equal footing and that no one shall be permitted to submit his bid upon a basis different from that of any other bidder." *Sweezey* v. *Mayor of Malden*, 273 Mass. 536, 542. It is also contended by the plaintiffs that there is a difference between the motion as made and the motion as put to the meeting by the moderator, above quoted; that the latter motion is to be disregarded; and that the motion as actually made controls in determining the sense of the motion as carried by the body. *Ogden* v. *Selectmen of Freetown*, 258 Mass. 139. The plaintiffs further contend that the town was not bound to appropriate money for conveying pupils to and from school, citing *Newcomb* v. *Rockport*, 183 Mass. 74, and for that reason the town meeting could legally require the school committee not to enter into a three-year contract for such transportation, at least until the special committee investigating the matter should report; and that the school committee could not legally enter into or award a contract for the transportation of school children for a period of three years without an appropriation.

G. L. (Ter. Ed.) c. 40, § 4, as amended by St. 1932, c. 271, § 6, provides in part: "A town may make contracts for the exercise of its corporate powers and for the following purposes: . . . For the furnishing of transportation of school children. Contracts for such transportation may be made by the school committee for periods not exceeding three years"; § 5 provides: "A town may at any town meeting appropriate money for the following purposes: . . . For the support of public schools authorized or required by law, and for conveying pupils to and from the public schools . . . the same to be expended by the school committee in its discretion"; and c. 71, § 68, as amended by St. 1934, c. 97, § 1, provides in part: "Every

town shall provide . . . schoolhouses . . . conveniently situated for the accommodation of all children therein entitled to attend the public schools. If the distance between a child's residence and the school he is entitled to attend exceeds two miles . . . and the school committee declines to furnish transportation, the department [State department of education], upon appeal of the parent or guardian of the child, may require the town to furnish the same for a part or for all of the distance between such residence and the school." The above excerpts from the General Laws establish (1) that the school committee had the authority and duty to enter into a contract for the transportation of children residing more than two miles from school; (2) that such authority and duty could not be restrained or limited to one year by the town or until such time as an advisory committee of the town should report; (3) that the advertised specifications were sufficiently explicit to give bidders an opportunity to act intelligently and that said bidders were placed upon an equal footing; (4) that the school committee could not be required by the town to call for bids or to allot the contract to the lowest bidder; (5) that the school committee had the right to reject, under its reservation, all bids, and to allot the contract to such person, bidder or not, as it deemed wise in the exercise of good faith and sound judgment; and (6) that the absence of a specific appropriation did not invalidate the action of the school committee. "Where the law authorizes the making of a contract for the performance of constantly recurring duties to run for more than one year, such a charter provision does not mean that the entire sum to be paid at regular intervals during several years must be appropriated at the start." *Clarke* v. *Fall River*, 219 Mass. 580, 586. *Smith* v. *Dedham*, 144 Mass. 177, 180.

It is found by the master that "Unless otherwise ordered by the court, the defendants, the members of the school committee, acting for and in behalf of the town, intend to carry out said award of said contract to the Methuen Bus Company, Inc., for a period of three years at the rate of $13,950 per year and to enter into said contract drafted by

the town counsel and annexed" to the master's report; and that "the Methuen Bus Company, Inc., intends to accept said award and enter into said contract." The master also finds as an inference from all the evidence that in case said contract is executed, warrants will be drawn for payment for services performed under it and that they will be honored by the town treasurer.

*Decree affirmed.*